# UNITED STATES  DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

JOHNATHAN E. EMILIEN                                   CIVIL ACTION

VERSUS                                                 NO.  15-0123

STATE OF LOUISIANA, PARISH OF JEFFERSON,               SECTION "H"(4)
SGT. B. LEE, SGT. T. BERRIAN, DEPUTY H. SILL,
DEPUTY G. DONALD, DEPUTY CONLAY,
JEAN LLOVET

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C) and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.  On April 13, 2015, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff participating by conference telephone call.[2]   Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

## I.    Factual and Procedural Background

### A.        Original and Amended Complaints

The plaintiff, Johnathan E. Emilien ("Emilien"), is an inmate who is currently detained in the Jefferson Parish Correctional Center ("JPCC") in Gretna, Louisiana.  Emilien filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, the State of Louisiana, the Parish of Jefferson, Sgt. B. Lee, Sgt. T. Berrian, Deputy H. Sill, Deputy G. Donald,

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis for the claims.  The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 24.  The plaintiff was sworn prior to testifying and the hearing was digitally recorded.

Deputy Conlay, and Jean Llovet, seeking monetary compensation for his pain and suffering and mental and physical abuse and a restraining order against the involved deputies.

Specifically, in his original complaint, Emilien alleges that, on December 3, 2014, he was given a shower restriction by the Security Investigation Unit at JPCC.  He was not allowed out of his cell until the next day when it ended and he was allowed to shower and make phone calls.  He claims without specificity that he received another disciplinary write-up on December 8, 2014.

He also claims that, on December 9, 2014, he left his cell when the other inmates were let out for their one-hour of recreation.  He claims that he did not know that he was not authorized to do so.  While in the recreation room, attempting to call his girlfriend, he was told to get away from the phone.  Before he could comply, he was beaten by Jefferson Parish deputies, including the defendants Berrian, Sill, Donald and Conlay.  Sergeant Berrian had Emilien taken to the medical unit where his injuries were photographed and medical logs were made.  As a result of the incident, Emilien received disciplinary charges for resisting the officers and battery on the officers.

Emilien also indicates that on December 10, 2014, he was taken to University Hospital where x-rays were taken of his chest, knee and leg, although his complaints of back pain were ignored.  Upon his return to the prison he was taken to see the nurse, given medication and returned to a cell.

He complains that the shower in this area did not have railings to help him walk, and as a result, he slipped and fell in the shower on December 11, 2014.  He hit his head and injured his back and leg.  He claims that Sergeant Lee arrived with another deputy and neither would help him up off of the floor.  Sergeant Lee told him to file a sick call request.  Emilien did not get up and remained on the floor of the shower calling for help.  At some point Sergeant Banks and the other deputy returned with a wheel chair and took him to the medical unit, where he complained about his injuries.  He received three band-aids and was sent to isolation.

Emilien claims that he filed a grievance complaint against Sergeant Lee and the medical staff.  The next day, Sergeant Lee refused to allow him his one-hour shower time.  He filed a second grievance against her for retaliation.  He further claims that he filed another sick call request on December 13, 2014, complaining that he was never treated for his head injury and back and leg pain.

Emilien also claims that he was finally taken for a disciplinary hearing on December 29, 2014, for the resisting officers and battery charges, although he was never given a copy of the charges.  He complains that the charges were false and factually wrong.  The next day, he was sentenced to thirty (30) days on lockdown.  In connection with the disciplinary proceeding on December 29, 2014, Emilien claims that he filed a grievance complaint that the paperwork was tampered with and he was denied legal calls.  He also claims to have filed numerous sick call complaints about his back and leg injuries for which he was never treated.

In his amended complaint, Emilien alleges that on February 27, 2015, his hands and wrists were injured when Sergeant Berrian placed handcuffs on him while he was being escorted out of his cell.  He complained that the cuffs were too tight and were cutting off the circulation to his hands.  The Sergeant refused and no one would call for a ranking officer or take him to medical to document that he was losing feeling in his hands.  He claims that Sergeant Berrian then took him back to his cell.  While there, the Sergeant grabbed the center chain and twisted the cuffs as if he was trying to remove them.  Emilien admits that he then purposely prevented the Sergeant from removing his cuffs until he called the medical unit or a ranking officer.  As a result, Sergeant Berrian threatened him with mace, even though Emilien was in handcuffs in his cell.

**B.**     **The *Spears* Hearing**

Emilien testified at the *Spears* Hearing that he is a pretrial detainee awaiting trial on charges of possession of heroin.  He also stated that, on December 8, 2014, Sergeant Berrian had his water

cut-off in the cell without telling him the reason. When he requested to see a ranking officer, several officers and deputies came into the dayroom carrying a mace gun. He claims that Berrian called him a ring leader and told him to watch out. The next day, on December 9, 2014, he was let out of his cell for recreation and was never told he could not get out or had to go back to his cell. Instead, while he was on the phone, Sergeant Lee, Sergeant Berrian, Deputy Cox and Deputy Parker came on the tier. The deputies approached him to ask what he was doing. Emilien asked why they were bothering him and Deputy Cox grabbed his arm causing him to drop the phone. Emilien stated that Deputies Cox and Parker tried to push him to the wall and Sergeant Berrian then hit him four or five times with a baton. He said that Cox and Parker held him up so he did not fall to the ground, and one of the officers called for assistance claiming he was resisting the officers. After that, Parker, Berrian, Donald, Conlay, Cox, and Sill repeatedly hit and kicked him and beat him with batons. Afterward, he could not stand up and his legs were busted open and bleeding.

Emilien continued stating that the officers cuffed him and dragged him off the tier into the hallway. He claims that he had shocking pain in his legs and sore ribs because Deputy Sill stomped on him. He claims that, in the hallway, Deputy Cox put a foot on his head to keep him down, and Sergeant Berrian sat nearby verbally taunting him and teasing him about crying. They eventually called for a wheelchair and Sergeant Lee advised Captain Engel that she was going to have Emilien booked for resisting and beating the officers.

Although at one point he claims that he refused to go to medical after the incident, Emilien stated that he was taken to the medical unit where pictures were taken and his wounds were cleaned. He also alleges that defendant Jean Llovet instructed that he did not need to be taken to the hospital so he was sent to a disciplinary cell without further examination. He claims he had to be carried because he could not walk.

Emilien also complained that the deputies gave the investigators two stories about the incident.  In the prison write-up, the report said that he refused lockdown and resisted the officers by flailing his arms and slapping and kicking the officers.  In the arrest report for the felony criminal charges, the report indicated that he threatened the officers, jerked his arm away from Deputy Cox, and raised his fists as if to fight.

As a result of the incident, Emilien was given a disciplinary write-up and rebooked on felony charges of two counts of battery on correctional officers (for kicking Berrian and scratching Cox) and two counts of resisting the correctional officers (Berrian and Cox).  He claims that the two counts of resisting the officers are proceeding before the 24th Judicial District Court and that he is represented by counsel retained by his family.

Emilien also stated that after the December 9, 2014, incident, he was placed on disciplinary lockdown.  The next day, December 10, he was sent to the hospital for x-rays and was diagnosed with swelling and bruised tissue.  Upon his return, the nurse returned him to his disciplinary lockdown cell.  By that time, he had not had a shower in three days.  He asked his cellmate to carry him to the shower.  The shower on that tier did not have a railing and he slipped and fell.  Sergeant Lee came to the shower and told him to get up and go to his cell.  Later, Sergeant Banks took him to the medical unit, where he was only given band aids and not checked for his back or bruised ribs.  After that, on December 12, 2014, Sergeant Lee would not let him out his cell.  He wrote another grievance complaint against her, which he later withdrew because he was satisfied with the resolution of his complaint.

Eventually, on December 29, 2014, he was taken before the disciplinary board on the write-up he received on December 9, 2014. The head of the disciplinary board, Ms. Manuel, told him that his shower restriction should not have prevented him from leaving his cell, so she continued the

hearing for the next day.  When he went back the next day, he was sentenced to serve thirty (30) days on disciplinary lockdown concurrent with his other disciplinary sentences.

Emilien stated that he did not know that he had been booked on the criminal charges until forty-five (45) days later on January 22, 2015, when he was taken to court for a preliminary hearing. He filed a grievance complaint at the prison claiming that his charges were false because of the factual differences between the prison reports and the arrest reports.  Captain Engel found the grievance to be unfounded.

Emilien also conceded that the prison officials responded to all of his grievance complaints, although the responses always came from the same sergeants who were involved in the problems. He did not seek any further review or appeal of the grievance responses.

In summary, Emilien stated that he sued Sergeant Berrian because he was involved in the December 9, 2014 beating and retaliated against him by taunting and teasing him.  Berrian also caused him injuries on February 27, 2015, when he tightened and twisted the handcuffs around his wrists while transporting him at the jail.  He complains that Berrian is always looking for a problem and he does not understand why Berrian is always assigned to be around him.

He also stated that he sued Sergeant Lee because she just stood there while they beat him on December 9, 2014.  Deputy Sill, he claims, stomped on him during the December 9 incident causing his bruised ribs.  He also stated that Deputies Donald and Conlay hit him with batons during that same incident.

## II.    **Pending Motion**

Before the Court is a motion filed by defendant Jean Llovet pursuant to Fed. R. Civ. P. 12(b)(6) seeking dismissal of the claims against her for failure to state a claim for which relief can

be granted.[3]  Specifically, Llovet contends that Emilien failed "to mention at any point" that Llovet provided or failed to provide him with medical treatment for a serious medical need.  Alternatively, Llovet argues that she is entitled to qualified immunity and Emilien has not presented sufficient facts to overcome that defense.  Llovet also argues that he fails to state a claim against her in her official capacity.  Emilien has not filed an opposition to this motion.

Before proceeding to the defendant's motion to dismiss, the Court is called upon to conduct its statutory review for frivolousness of this *in forma pauperis* complaint under 28 U.S.C. § 1915 and § 1915A.

## III.   Statutory Review

### A.   Standards of Review Frivolousness

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint.  *See Cay v. Estelle*, 789 F.2d 318 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist.  *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999).  It lacks an arguable factual basis only if the facts

---

[3]Rec. Doc. No. 26.

alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490 U.S. at 327-28. Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

        **B.**    **Improper Defendants**

As an initial matter, the Court finds that several of the named defendants are not suable entities or persons subject to suit under § 1983. For the following reasons, Emilien's claims against these defendants must be dismissed.

        **1.**    **State of Louisiana**

Emilien has named the State of Louisiana as a defendant, although he has not presented a factual or legal basis for doing so. Nevertheless, this Court can not address his claims for monetary relief against the State. The Eleventh Amendment forbids federal courts from entertaining a suit for monetary damages brought by a citizen against his own State. *Pennhurst State School v. Halderman*, 465 U.S. 89, 98 (1984); *Voisin's Oyster House, Inc. v. Guidry*, 799 F .2d 183, 185-86 (5th Cir.1986). While the State may expressly waive this Eleventh Amendment sovereign immunity, Louisiana has not done so in this case. See *Edelman v. Jordan,* 415 U.S. 651, 673 (1974) (holding that a state's consent to suit against it in federal court must be expressed "unequivocally"); *Welch v. Dep't of Highways,* 780 F.2d 1268, 1271-73 (5th Cir.1986). La. Rev. Stat. Ann. § 13:5106(a) provides that "no suit against the state . . . shall be instituted in any court other than a Louisiana state court." Accordingly, the Court is without jurisdiction to hear the plaintiff's claims for monetary

relief against the State of Louisiana. *See Warnock v. Pecos County, Tx.*, 88 F.3d 341, 343 (5th Cir. 1996).

Emilien's claims against the State of Louisiana must be dismissed as frivolous, and otherwise for failure to state a claim for which relief can be granted and seek relief from an immune defendant pursuant to § 1915(e) and § 1915A.

### 2.   Parish of Jefferson

Emilien also names the Parish of Jefferson as a defendant without identifying the nature of the claims against that governmental entity. To establish liability against a parish government under § 1983, the plaintiff must point to the Parish's policy or custom or breach of duty that caused the alleged constitutional deprivation. *See Monell v. New York City Dept. of Soc. Serv.*, 436 U.S. 658, 690–91 (1978); *Bennett v. City of Slidell*, 728 F.2d 762, 767-68 (5th Cir. 1984). Emilien has not and can not do so in this case where his claims are directed to the sheriff's deputies and other personnel at the JPCC arising from the administration of and his treatment at the jail. *See O'Quinn v. Manual*, 773 F.2d 605, 609 (5th Cir. 1985) (stating that the administration of the jail is province of the sheriff).

It is well settled that, in Louisiana, the Parish is not responsible for the torts, constitutional or otherwise, committed by the Sheriff and his employees. *Salvagio v. Doe*, No. 13-5182, 2013 WL 6623921, at *2-3 (E.D. La. Dec. 16, 2013) (Vance, C.J.) (citing *Burge v. Parish of St. Tammany*, 187 F.3d 452, 470 (5th Cir. 1999)); *Broussard v. Boudoin*, No. 03-3040, 2004 WL 223984, at *1 (E.D. La. Jan. 29, 2004) (Shushan, M.J.); *Jones v. St. Tammany Parish Jail*, 4 F. Supp.2d 606, 613 (E.D. La. 1998). Without some legal responsibility in place, Emilien can not state a basis for liability on the part of the Parish arising from the actions of the deputies and the conditions at the JPCC. He has not and would not be able to point to any parish policy or custom related to the events within the

prison for which it had no control and which would be required to support any claim of liability against the Parish itself under *Monell*.

Emilien's claims against Jefferson Parish must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A.

### C.  <u>Allegations against the Remaining Defendants</u>

Emilien was a pretrial detainee at the time of the events challenged here.  As a pretrial detainee, his constitutional claims arise under the Due Process Clause of the Fourteenth Amendment, which, like the Eighth Amendment, places a duty on the State and its actors to protect against harm to persons in its confinement.  *See Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996).  In this type of case, where the inmate alleges an "episodic act or omission" by jail officials, the Court applies an analysis that is identical to that applied in Eighth Amendment cases.  *Hare*, 74 F.3d at 643.  Emilien must show that the officials acted with deliberate indifference to his constitutional rights.  *Id*. at 636 (citing *Farmer v. Brennan*, 511 U.S. 825 (1994)).

"Deliberate indifference" means that a prison official is liable "only if he knows that the inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it."  *Farmer*, 511 U.S. at 847.  In applying this standard, the Court's have held that "the prisoner must show that the defendants (1) were aware of facts from which an inference of an excessive risk to the prisoner's health or safety could be drawn and (2) that they actually drew an inference that such potential for harm existed."  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998) (citing *Farmer*, 511 U.S. at 837).  "Under exceptional circumstances, a prison official's knowledge of a substantial risk of harm may be inferred by the obviousness of a substantial risk."  *Id*. (citing *Farmer*, 511 U.S. at 842 & n.8).

> The Supreme Court has recently reaffirmed that "deliberate indifference" is a <u>stringent</u> standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action . . . . The "deliberate indifference" standard permits courts to separate omissions that "amount to an intentional choice" from those that are merely "unintentionally negligent oversight[s]."

*Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 551 (5th Cir. 1997) (citing *Bd. of County Comm'rs v. Brown*, 520 U.S. 397 (1997)) (citations omitted) (emphasis added).

For the reasons that follow, Emilien has not met his burden to establish a constitutional violation or that the officials acted with an intentional indifference to his protected needs.

### 1.   <u>Claims of Medical Indifference Against Jean Llovet</u>[4]

Emilien named Jean Llovet, a supervisor in the JPCC medical unit, as a defendant for her role in the alleged denial of medical care for the injuries he received on December 9, 2014. Emilien alleges that Llovet directed that he not be taken to the hospital for treatment after the December 9, 2014, incident with the prison officers. As outlined above, Emilien stated at the *Spears* Hearing that it was not until the next day when he was seen by a different nurse that the decision was made to send him to University Hospital for examination and x-rays.

In her responsive pleading, Llovet acknowledged that she is "a registered nurse employed as the Health Services Administrator for Correcthealth of Jefferson, LLC the company with whom Jefferson Parish contracted to provide medical care to the prison population at the JPCC."[5] As an

---

[4] Llovet addresses her motion to dismiss, in part, to an official capacity claim. Emilien, however, clarified his claims at the *Spears* Hearing and at no time has he asserted an official capacity claim against Llovet. His claims are specific to her individual actions and not some overall policy of Correcthealth. Also, there is no precedent in this circuit for a qualified immunity defense by a private Correcthealth employee like Llovet. *See Landry v. Lafourche Parish Detention Center*, C.A. 12-2092"B," Order and Reasons, Rec. Doc. No. 15 (E.D. La. Sept. 20, 2013) (finding Correcthealth medical care employees in Lafourche Parish prison were not entitled to qualified immunity under *Richardson v. McKnight*, 521 U.S. 399 (1997) and *Filarsky v. Delia*, __ U.S. __, 132 S. Ct. 1657, (2012)); *see also Cheek v. Nueces County Tx.*, No. 13-CV-26, 2013 WL 4017132, at *23-24 (S.D. Tex. Aug. 5, 2013) (discussing *Richardson* and *Filarsky* as applied to private corporate medical care providers in prisons).

[5] Rec. Doc. No. 26-2, pp. 1-2.

initial matter, the Court recognizes that "[a] private doctor under contract with a state prison to provide medical care to prisoners is considered a state actor because his action in providing medical care to prisoners is fairly attributable to the state." *See Bishop v. Karney*, 408 F. App'x 846, 848 (5th Cir. 2011) (citing *West v. Atkins*, 487 U.S. 42, 49-50, 54-57 (1988)); *accord Filarsky v. Delia*, __ U.S. __, 132 S. Ct. 1657, (2012) (finding that a private individual retained by the state government to carry out its work can be sued as a state actor under § 1983). The same is true of employees of a private corporation who perform traditional government functions at the prisons. *Accord Richardson v. McKnight*, 521 U.S. 399 (1997). As such, while Llovet is properly named as a defendant under § 1983, Emilien's claims against her must be dismissed.

Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983. *Estelle v. Gamble*, 429 U.S. 97, 104-105 (1976). "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011). As noted above, a prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (concluding that the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff' Dep't*, 306 F.3d 515 (7th Cir. 2002) (same).

Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs. It is also true where the indifference is

manifested by prison officials or prison doctors and healthcare providers in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id.*   In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment.  *Id.*  Further, mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs.  *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).  Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section 1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("[M]ere negligence in giving or *failing to supply* medical treatment would not support an action under Section 1983." (emphasis added)); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989).

In this case, Emilien's only assertion against Llovet is that she did not authorize that he be sent to the hospital following the incident with the prison officials on December 9, 2014.  Emilien concedes in his pleadings and testimony (accepted as a more definite statement and amendment to his complaint) that he was examined in the medical unit, and his injuries were noted and photographed.  He also indicates in his pleadings that his wounds were cleaned and bandaged, and he was given an over the counter analgesic like ibuprofen.

Emilien has not established that this treatment or Llovet's decision amounted to an intentional indifference to a serious medical need or substantial risk of harm.  Although he claims that the injuries to his leg kept him from walking, his own concessions reflect that he had nothing

more than cuts and bruises.  Although he claims to have been bleeding and in some discomfort, the extent of his injuries as he describes them would not have been categorized as serious or the type of injury for which even a common person would have sought additional care at a hospital.  *See Jackson v. Hochberg*, No. 14-0089, 2015 WL 1219253, at *4 (N.D. Miss. Mar. 17, 2015) (finding that abrasions and bruises did not constitute serious medical need).  A serious physical injury for purposes of § 1983 recovery "is <u>not</u> a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks."  *Luong v. Hatt*, 979 F. Supp 481 (N.D. Tex.1997) (emphasis added).

In addition, a health care provider's decision to provide additional or different treatment and as to which medications to prescribe is a matter for medical judgment that is not without more to be second-guessed on review.  *See Gobert*, 463 F.3d at 346.  Furthermore, in this case, Llovet's medical judgment and decision not to send Emilien to the hospital did not result in a substantial risk of serious harm under the Eighth Amendment intentional indifference standard.  Emilien concedes that when he was taken to the hospital for x-rays after his repeated complaints of leg pain and inability to walk, he was diagnosed there with nothing more than swelling and soft tissue bruising, exactly what he was treated for at the prison.  Even his later back x-ray did not mandate any further treatment.

Without a showing of an intentional indifference to a serious medical need leading to the substantial risk of harm, Emilien has failed to state a claim for relief against Llovet.  The claims against her should be dismissed as frivolous and for failure to state a claim for which relief can be granted under § 1915(e) and § 1915A.

### 2.   Claims of Retaliation, Harassment and Verbal Threats by Sergeant Berrian

Emilien claims that he generally is disgruntled with Sergeant Berrian's constant presence around him, and the Sergeants' references to him as a trouble-maker.  He also, under a broad reading, suggests that the Sergeant is targeting him or constantly monitoring his actions in hopes of charging him with a disciplinary violation.  Thus, assuming these allegations to be true, Sergeant Berrian's menacing behavior, while not pleasant to endure, does not rise to the level of a constitutional violation.

The Fifth Circuit has long held that "'mere threatening language or gestures of a custodial officer do not, even if true, amount to constitutional violations.'"  *Robertson v. Plano City*, 70 F.3d 21, 24 (5th Cir. 1995) (citing *McFadden v. Lucas*, 713 F.2d 143, 146 (5th Cir. 1983)); *accord Burnette v. Phelps*, 621 F. Supp. 1157, 1162 (M.D. La. 1985); *see also*, *Collins v. Cundy*, 603 F.2d 825, 827 (10th Cir. 1979) (finding that verbal harassment consisting of sheriff's threat to "hang" prisoner does not state constitutional deprivation actionable under § 1983); *Johnson v. Glick*, 481 F.2d 1028, 1033 n.7 (2d Cir. 1973), *abrogated in part on other grounds by Graham v. Connor*, 490 U.S. 386, 397 (1989) (holding that the use of language, no matter how violent, does not constitute a § 1983 violation); *Baird v. Perez*, No. 98-3762, 1999 WL 386746 at *2 n.3 (S.D.N.Y. Jun. 10, 1999) ("[V]erbal harassment, abuse and even vile language by arresting officers 'do not constitute a violation of any federally protected right.'") (quoting *Bowles v. State*, 37 F. Supp.2d 608, 613 (S.D.N.Y. 1999)).

In addition, "[c]laims of hurt feelings, humiliation, and other heartfelt, yet objectively trivial indignities, are not of Constitutional moment."  *Jackson v. Liberty County*, 860 F. Supp. 360, 363 (E.D. Tex. 1994).  "[C]itizens do not have a constitutional right to courteous treatment by the police.  Verbal harassment and abusive language, while unprofessional and inexcusable, are simply not sufficient to state a constitutional claim under 42 U.S.C. § 1983."  *Slagel v. Shell Oil Reference.*, 811

F. Supp. 378, 382 (C.D. Ill. 1993), *aff'd*, 23 F.3d 410 (7th Cir. 1994) (citations omitted).  Thus, Emilien's endurance of verbal abuse and even threats do not rise to the level of a constitutional violation.

Furthermore, while Emilien may have used the word retaliation in his claims, the true gist of his complaints against Berrian is that of harassment as addressed above.  The law does provide that prison officials may not retaliate against a prisoner for exercising his First Amendment rights of access to the courts or to complain through proper channels about alleged misconduct.  *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006); *Woods v. Smith*, 60 F.3d 1161, 1164, 1166 (5th Cir. 1995).  Emilien has made no such claim against Sergeant Berrian.  He has not alleged that Berrian acted in response to or to prevent his exercise of a particular constitutional right as would be required for a retaliation claim under § 1983.  Furthermore, a vague and conclusory retaliation claim must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted.  *See Sanchez v. Grounds*, 591 F. App'x 263, 264-65 (5th Cir. 2015) (concluding that allegations which are conclusory and speculative do not give rise to any inference that a prison official's actions were motivated by a retaliatory intent) (citing *Woods*, 60 F.3d at 1166).

For these reasons, Emilien's claims of retaliation, harassment and verbal threats against Sergeant Berrian are frivolous and otherwise fail to state a claim for which relief can be granted. The claims must be dismissed with prejudice pursuant to § 1915(e) and § 1915A.

### 3.   Claims of Excessive Force Against Sergeant Berrian on February 27, 2015

Emilien alleges that on February 27, 2015, he was being escorted in the jail by Sergeant Berrian. He claims that he told Sergeant Berrian that the handcuffs were too tight and were numbing the feeling in his hands.  After several minutes of complaining, as described by Emilien, Sergeant

Berrian returned him to his cell.  Emilien alleges that, instead of just removing the cuffs, Sergeant Berrian first grabbed the center chain and twisted it which caused the cuffs to become even tighter. After this, Emilien refused to allow or somehow prevented the Sergeant from removing the cuffs until a ranking officer or the medical personnel were called.  Emilien does not describe how the incident concluded except to say that Sergeant Berrian pointed mace at his face in an apparent effort to get him to comply with the removal of the handcuffs.

The United States Supreme Court has "held that 'the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury.'"  *Wilkins v. Gaddy*, 599 U.S. 34, 34 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 4 (1992)).  The Supreme Court has repeatedly declared that the "core judicial inquiry" is not the quantum of injury sustained, but instead "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  *Hudson*, 503 U.S. at 7;  *Wilkins*, 599 U.S. at 37; *see also*, *Whitley v. Albers*, 475 U.S. 312, 319-321 (1986).

The Court also recognizes, however that not "every malevolent touch by a prison guard gives rise to a federal cause of action."  *Hudson*, 503 U.S. at 9.  The Eighth Amendment's prohibition of against cruel and unusual punishment excludes the *de minimis* use of physical force that is not otherwise "repugnant to the conscience of mankind."  *Id*.  An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. *Wilkins*, 559 U.S. at 38 (citing *Hudson*, 503 U.S. at 9).

Under some circumstances, an inmate may state a claim for the unconstitutional use of excessive force involving the use of handcuffs.  *See Fennell v. Quintela*, 393 F. App'x 150, 152, 155

(5th Cir. 2010).[6]   However, the United States Fifth Circuit has repeatedly recognized that "handcuffing too tightly, without more, does not amount to excessive force." *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001); accord *Freeman v. Gore*, 483 F.3d 404, 417 (5th Cir. 2007) (rejecting excessive force claim as *de minimis* where plaintiff alleged "that the deputies twisted her arms behind her back while handcuffing her, 'jerked her all over the carport,' and applied the handcuffs too tightly, causing bruises and marks on her wrists and arms").

In this case, Emilien alleges that he complained that the cuffs were too tight and that Berrian essentially ignored his complaints by not loosening the cuffs while they were in the hallway.  After hearing enough of his complaints, however, Berrian returned Emilien to his cell and attempted to remove the cuffs.  When doing so, Emilien claims that Berrian pulled on the chain while attempting to unlock the cuffs.

Emilien essentially claims that he generally does not like Sergeant Berrian, and did not like the pulling used during the unlocking of the already tight handcuffs.  Nothing he alleges, however, indicates that Berrian was acting sadistically or maliciously in an effort to cause him harm when he was trying to remove the cuffs.

Furthermore, Emilien admittedly escalated the incident by his continued complaining and more significantly, by pulling away and refusing to present the cuffs to Berrian for removal.  Emilien stated, "I told him I would not give him the handcuffs until he called medical or Lt. Bryant."[7]  According to Emilien, Berrian pulled out his mace and pointed it at him to get Emilien to comply.

---

[6]In *Fennel*, the Fifth Circuit found that the plaintiff stated a claim sufficient to overcome summary judgment where he alleged that two escorting prison officers threatened him and engaged him to fight before locking him in a shower stall, after which one officer ordered him to put his hands through a hatch in the door, and when plaintiff complied, rather than remove his handcuffs, she grabbed his wrists and twisted them causing injury to his wrists and already injured shoulder, and where the force was not used in good-faith effort to maintain or restore discipline.

[7]Rec. Doc. No. 8, p. 2,

18

Under the circumstances, Emilien created a security incident and Berrian's presentation of the mace was in response thereto.  In other words, based on Emilien's own description of the events, by pointing the mace at him, Berrian was attempting to restore order and discipline.

Based on Emilien's claims, he has not presented the type or use of malicious and unnecessary force by Berrian during this incident on February 27, 2015, which would state a claim sufficient to survive the Court's statutory review.  His claims against Berrian arising from this incident should be dismissed as frivolous and otherwise for failure to state a claim pursuant to § 1915(e) and § 1915A.

### 4.    Claims of Excessive Force Against Sergeant Berrian, Deputy Sill, Deputy Donald, and Deputy Conley on December 9, 2014[8]

Emilien alleges that, on December 9, 2014, the defendants, Berrian, Sill, Donald, and Conley, without cause or provocation, beat him with batons, kicked him, and stomped on him, causing injuries to his leg, back, chest and head.  As a result of this incident, he claims that he received disciplinary charges for kicking and hitting the correctional officers and disobeying and resisting the correctional officers for which he received a thirty day disciplinary sentence.  He also alleges that he was also criminally charged as a result of the incident with two felony counts of resisting the officers which are proceeding to trial.

Emilien alleges that he did not resist the officers and that the beating was unprovoked and unfounded since he was not told that he could not leave his cell.  As discussed above, in considering Emilien's claims, the Court will have to determine whether the force used by the officers that day "was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7; *Wilkins*, 599 U.S. at 37.  Because of Emilien's claim that he

---

[8]Although Emilien has not named Deputies Cox or Parker as defendants, the same analysis would apply to their role in the events of December 9, 2014.

did not engage or encourage the force used, the claims against these defendants are directly connected to the facts supporting his current criminal charges and the disciplinary charges resolved against him.  For that reason, Emilien's claims against these defendants arising from the December 9, 2014, incident are not appropriate for federal review at this time.

Before a plaintiff can proceed under § 1983 on a claim that challenges his current incarceration, he must show that his conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Jackson*, 49 F.3d at 177.  In *Heck*, the Supreme Court held that a claim under § 1983 is barred if success in the suit would necessarily imply the invalidity of an outstanding criminal conviction or a plaintiff's present confinement.  This limitation avoids collateral attacks on convictions that are still outstanding.  *Heck*, 512 U.S. at 484-85. Although the Supreme Court's decision in *Heck* concerned a civil action for monetary damages, the United States Court of Appeals for the Fifth Circuit has also applied *Heck* in cases in which the plaintiff also seeks injunctive relief.  *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998) (*en banc*) (citing *Edwards v. Balisok*, 520 U.S. 641 (1997)).

The Supreme Court has extended the *Heck* restrictions to convictions and sentences arising from prison disciplinary proceedings.  *Edwards*, 520 U.S. at 648.  As a result, any claim brought by Emilien which would impact the validity of the facts underlying his disciplinary convictions arising from the December 9, 2014, are not proper for this Court's review.  Emilien's claims challenge the very reason he was restrained by the officers and deny that he struck the officers to instigate the force used to restrain him.  These allegations directly challenge the very basis of the disciplinary proceedings against him.

20

Emilien also has not successfully challenged his disciplinary charges arising from that date and instead admits that he did not appeal the conviction or sentence imposed. As a result, a judgment by this Court in his favor would necessarily imply the invalidity of his disciplinary conviction. Ordinarily, his claims against these defendants for the use of excessive force on December 9, 2014, would be barred by *Heck* as applied by *Edwards* and its progeny. However, Emilien's disciplinary charges are not the only charges he received as a result of the December 9, 2014, incident. Emilien also faces pending felony criminal charges of resisting the correctional officers. These unresolved charges prevent the Court from recommending dismissal of Emilien's claims at this time.

As noted above, Emilien denies that he resisted the officers, struck the officers, and in any way provoked the restraint used against him. His claims of excessive force are clearly tied to the validity of the allegations supporting the two state felony charges for resisting the correctional officers. Emilien's last indication to this Court was that he was awaiting trial on the resisting charges which were to be tried along with other criminal charges unrelated to the December 9, 2014 incident. The records of the 24th Judicial District Court show that Emilien has not yet been taken to trial on these charges.[9]

Because his felony charges are still pending, *Heck* does not yet apply or stand to bar Emilien's claims while in this posture. *See Wallace v. Kato*, 549 U.S. 384, 393 (2007) (holding that *Heck* does not bar "an action which would impugn an anticipated future conviction."). Nevertheless, the United States Supreme Court has made clear that federal courts need not proceed with cases in which a *Heck* problem <u>may</u> ultimately arise. Rather, the Supreme Court has explained that, when

---

[9]A member of the Court's staff contacted the Jefferson Parish District Attorney's Office and obtained a copy of the docket master in Jefferson Case No. 15-001 in which Emilien was charged with two counts of resisting an officer with use or threat of force or violence. A copy of the docket master has been separately filed into the record.

a plaintiff files a claim related to rulings that will be made in an anticipated criminal trial, the District Court must stay the civil action until the criminal case is ended.  *Id*. 549 U.S. at 393, 94; *see also*, *Mackey v. Dickson*, 47 F.3d 744, 746 (5th Cir. 1995).  The Court directed that if the plaintiff is ultimately convicted, the *Heck* bar would require dismissal; if he is not, the District Court can proceed with the civil action, absent some other bar to suit.  *Id*. 549 U.S. at 393-94.

Under that reasoning, Emilien's excessive force claims must be stayed until such time as his state criminal proceedings are concluded.  *See Wilson v. Dailey*, No. 11-117, 2011 WL 2637183, at *2 (E.D. La. Jul. 06, 2011).  For the foregoing reasons, Emilien's excessive force claims against defendants, Berrian, Sill, Donald, and Conley, must be **STAYED** pending the outcome of his criminal proceedings in Jefferson Case No. 15-001 for two counts of resisting an officer with use or threat of force or violence.

### 5.  <u>Claims of Failure to Protect Against Sergeant Lee</u>

Emilien testified that he sued Sergeant Lee because, on December 9, 2014, she stood by and watched the other officers beat, kick and stomp on him and did nothing to stop the use of excessive force against him.  He claims that her inaction amounted to a failure to protect him.

The failure to protect an inmate from the use of excessive force by others can give rise to liability under § 1983 when a prison guard knows of a substantial risk of harm and fails to take reasonable measures to protect an inmate from another guard's use of excessive force.  *Davis v. Cannon*, 91 Fed. Appx. 327, 329 (5th Cir. 2004) (applying the Fourth Amendment analysis in *Hale v. Townley*, 45 F.3d 914, 919 (5th Cir. 1995) in the prison context under the Eighth Amendment); *Garza v. U.S. Marshals Serv.*, No. B-07-052, 2008 WL 501292, at *3 (S.D. Tex. Feb. 21, 2008) (same); *Smith v. Franklin*, No. 10-0138-RET-CN, 2010 WL 5563507, at *2 n.2 (M.D. La. Dec. 6,

2010) (noting that the *Farmer* intentional indifference to a known substantial risk factor still applies to a by-standing officer's failure to protect).

In order to find that Sergeant Lee failed to protect Emilien in a constitutional sense, the Court would have to first consider whether the other deputies, particularly Berrian, Sill, Donald, and Conley, used excessive force against him on December 9, 2014, and she failed to intervene or prevent the use of excessive force. As discussed above, any determination by this Court on the use *vel non* of excessive force without provocation necessarily involves the factual basis supporting Emilien's related disciplinary conviction and pending state felony charges. For this reason, and without need to be repetitive, the Court finds that the failure to protect claim against Sergeant Lee also must be **STAYED** pending resolution of the state felony charges against Emilien.

## IV.    Defendant Llovet's Motion to Dismiss

Because the Court has found that the claims raised against defendant Llovet are frivolous and otherwise fail to state a claim for which relief can be granted pursuant to § 1915(e) and § 1915A, the Court need not consider her motion to dismiss, which is based at least in part on the same grounds addressed by the Court. The Court's recommendation following the statutory review leaves no claims remaining against Llovet. Therefore, the motion can be dismissed without prejudice as moot.

## V.    Recommendation

It is therefore **RECOMMENDED** that Emilien's § 1983 claims against the defendants, the State of Louisiana, Jefferson Parish, and Jean Llovet, be **DISMISSED WITH PREJUDICE** as frivolous, for failure to state a claim for which relief can be granted, or for seeking relief against an immune defendants, in accordance with 28 U.S.C. § 1915(e) and § 1915A.

It is further **RECOMMENDED** that Emilien's § 1983 claims against the defendant, Sergeant T. Berrian for the use of excessive force on February 27, 2015, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted in accordance with 28 U.S.C. § 1915(e) and § 1915A.

It is further **RECOMMENDED** that Emilien's § 1983 claims for the use of excessive force on December 9, 2014, by the defendants, Sergeant T. Berrian, Deputy H. Sill, Deputy G. Donald, and Deputy Conlay, and his § 1983 claim for failure to protect him on December 9, 2014, against Sergeant B. Lee, be **STAYED** and **ADMINISTRATIVELY CLOSED** for statistical purposes until such time as Emilien's state felony criminal charges of two counts of resisting an officer by use or threat of force or violence in Jefferson Case No. 15-001 have ended.

It is further **RECOMMENDED** that the Court order the plaintiff to move to reopen the matter within thirty (30) days following resolution of his state felony criminal charges, including any direct appeal or immediate supervisory review, and include notification to the Court in writing whether Emilien was convicted or acquitted of the two counts of resisting an officer by use or threat of force or violence in Jefferson Case No. 15-001.

It is further **RECOMMENDED** that the Motion to Dismiss (Rec. Doc. No. 26) filed by defendant, Jean Llovet, be **DISMISSED WITHOUT PREJUDICE** as moot.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[10]

New Orleans, Louisiana, this 25th day of June, 2015.

KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE

---

[10]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.